IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PENSION BENEFIT GUARANTY CORPORATION<br>1200 K Street, N.W.<br>Washington, D.C. 20005<br><br>           Plaintiff,<br><br>           v.<br><br>STATE AUTOMATIC HEATING<br>& COOLING CORPORATION<br>1335 Paramount Parkway<br>Batavia, IL 60510<br>           Defendant. | Case No. 1:17-cv-8774 |

## COMPLAINT

1. This action arises under Title IV of the Employee Retirement Income Security Act of 1974 ("ERISA"), *as amended*, 29 U.S.C. §§ 1301-1461.

2. Plaintiff, Pension Benefit Guaranty Corporation ("PBGC"), brings this action under 29 U.S.C. § 1303(e)(1) with respect to the State Automatic Heating & Cooling Corporation Pension Plan & Trust (the "Plan") to enforce the provisions of Title IV of ERISA, and to enforce a final agency determination that violations of Title IV have occurred. This is an action for enforcement of PBGC's final agency determination based on review of the agency's administrative record under 5 U.S.C. § 706.

### Jurisdiction and Venue

3. The Court has jurisdiction over this action under 29 U.S.C. § 1303(e)(3), as well as under 28 U.S.C. §§ 1331 and 1345.

4. Venue is proper in this Court under 29 U.S.C. § 1303(e)(2).

## Parties

5. PBGC is a wholly owned United States government corporation that administers and enforces the defined benefit pension plan termination insurance program under Title IV of ERISA.

6. PBGC regulates the termination of defined benefit pension plans covered by Title IV of ERISA. Pension plans that have sufficient assets to pay all of a pension plan's benefit liabilities may be terminated in a "standard termination" under 29 U.S.C. § 1341(b).

7. For plans that terminate in a standard termination, PBGC ensures compliance with the requirements of Title IV of ERISA.

8. Defendant, State Automatic Heating & Cooling Corporation ("State Automatic"), is an Illinois corporation, with its principal place of business in Batavia, Illinois. PBGC's Administrative Record 2, 5, 6, 458.[1]

9. At all relevant times, State Automatic was the Plan's contributing sponsor within the meaning of 29 U.S.C. § 1301(a)(13). AR 2, 453-458.

10. At all relevant times, State Automatic was the administrator of the Plan within the meaning of 29 U.S.C. §§ 1002(16), 1301(a)(1). AR 5-6, 455, 458.

## Title IV— Standard Terminations

11. In a standard termination, the plan administrator must allocate and distribute assets to the plan's participants and beneficiaries in accordance with 29 U.S.C. §§ 1341 and 1344.

---

[1] All subsequent references herein to PBGC's Administrative Record are abbreviated as "AR".

12. In a standard termination, the plan administrator is required to provide Plan participants a notice of intent to terminate the plan (the "NOIT"). 29 U.S.C. § 4041(a)(2), and (b)(1)(A); 29 C.F.R. § 4041.23. The NOIT serves as written notice to the plan's participants of the intended plan termination and provides the proposed termination date. 29 U.S.C. § 1341(a)(2).

13. In a standard termination, before distributing any plan assets, the plan administrator must send PBGC a "Standard Termination Notice – PBGC Form 500" ("Form 500") with information about plan assets and benefit liabilities. *See* 29 U.S.C. § 1341(b)(2)(A); 29 C.F.R. § 4041.25.

14. In a standard termination, the plan's assets must be sufficient for benefit liabilities, determined as of the plan's termination date. 29 U.S.C. § 1341(b)(1)(D). Accordingly, benefits must be determined under the plan provisions in effect on the plan's termination date, and amendments adopted after the date of plan termination that decrease benefits and are unnecessary to meet the Internal Revenue Code's (the "IRC") tax qualification requirements are prohibited. 29 C.F.R. § 4041.8.

15. The plan administrator must distribute the plan's assets by (a) purchasing "irrevocable commitments" (*i.e.*, annuities) from a private insurer to satisfy all benefit liabilities, or (b) an alternative form of distribution (*e.g.*, lump-sum payment) "in accordance with the provisions of the plan and any applicable regulations . . . ." 29 U.S.C. §§ 1341(b)(3)(A)(i), (ii).

16. The present value of lump-sum benefits paid in a standard termination must be valued as of the date of distribution. 29 C.F.R. § 4041.28(c)(2).

17. Once plan assets are distributed, the plan administrator must file a "Post-Distribution Certification for Standard Termination – PBGC Form 501 ("Form 501"), attesting

3

that all benefits under the plan were paid in accordance with Title IV of ERISA. *See* 29 U.S.C. § 1341(b)(3)(B); 29 C.F.R. § 4041.29.

18. Following receipt of the Form 501, PBGC continues to have authority regarding matters relating to the plan, 29 U.S.C. § 1341(b)(4), and is required, under 29 U.S.C. § 1303(a), to audit a statistically significant number of standard terminations to determine if participants entitled to a benefit have received their full benefits under the terms of the plan. PBGC's audits are subject to review under PBGC's administrative review procedures. 29 C.F.R. §§ 4003.1(b)(3)(iii), 4003.21-4003.35.

### The Plan

19. Effective May 1, 1982, the Plan was established to provide pension benefits to certain employees of State Automatic. AR 453.

20. The Plan is a single-employer, defined benefit pension plan covered under Title IV of ERISA. *See* 29 U.S.C. § 1321.

21. On or before April 30, 2013, without following the required plan termination procedures under Title IV of ERISA, *see* 29 U.S.C. § 1341(b)(2)(A); 29 C.F.R. § 4041.25, State Automatic distributed benefits to the Plan's 18 participants in the form of lump-sum payments totaling $1,053,441.40. AR 2-3, 5, 7-8, 18-19.

22. Over two years later, on or about January 6, 2015, PBGC received from State Automatic a Form 500 to terminate the Plan in a standard termination under 29 U.S.C. § 1341(b). AR 1-4.

23. State Automatic's Board minutes dated January 12, 2012, proposed a termination date of April 30, 2012 ("Termination Date"). AR 554.

24. April 30, 2012 was also the last filing date for PBGC premiums for the Plan. AR 861-64.

25. On or about January 6, 2015, PBGC also received from State Automatic a Form 501 certifying that all benefit liabilities under the Plan were calculated correctly in accordance with ERISA's provisions and regulations, and that all benefit liabilities under the Plan were satisfied. AR 1, 5-6.

26. Under section 5.7(a)(1) of the Plan, participants could elect an annuity as a form of distribution that was the "actuarial equivalent" of the benefits owed to the participant. AR 481-482. Alternatively, under section 5.7(b) of the Plan, participants could elect to not receive benefits in the form of an annuity and instead elect a lump-sum payment, that is the "actuarial equivalent" of the monthly retirement benefit. AR 484.

27. As of the Termination Date, under section 1.3 of the Plan, an "actuarial equivalent" was determined using whichever interest rate and mortality table assumptions specified in that section produced a higher benefit. AR 454-55.

28. As of the Termination Date, Plan section 1.3 further provided that the interest rate for calculating an "actuarial equivalent" was: 6% interest, pre- and post-retirement, and the mortality table was the 1983 IAM & IAF mortality table, post-retirement only ("Plan Assumptions"); or the 30-year Treasury rate in effect for December 2012 (2.88%) ("GATT Interest Rates") and 1994 GAR mortality table ("GATT Mortality Table") (collectively, the GATT Assumptions"). AR 454-55.

29. Using the GATT Assumptions produced higher lump sums than the Plan Assumptions. AR 831-832, 834-851.

5

30. On July 14, 2015, (over three years after the Termination Date) the Plan was amended by adoption of the Amendment for PPA, HEART Act, WRERA, and Other Law Changes (the "2015 Amendment"). AR 555-66.

31. The 2015 Amendment changed the means of calculating lump sums benefit distributions. Specifically, Article X of the 2015 Amendment provided that any provision prescribing the use of GATT Assumptions would be replaced with the segment interest rates and mortality table specified by the PPA, P.L. 109-280, § 302, 120 Stat. 780 (2006) ("PPA Assumptions"), for purposes of calculating lump-sum values under 417(e) of the IRC. AR 566.

32. Using the GATT Assumptions produced higher lump sums than the PPA Assumptions. AR 832-833, 843-60.

## Claim for Relief

33. PBGC repeats and re-alleges paragraphs 1 through 32.

34. By a letter dated April 22, 2015, PBGC notified State Automatic that the Plan's termination had been selected for audit. AR 9.

35. On January 6, 2017, PBGC issued an initial determination letter with respect to its audit (the "Initial Determination"). AR 870-74.

36. The Initial Determination found that a death benefit was not paid to Participant A's surviving spouse under Section 5.5 of the Plan. AR 872.

37. The Initial Determination also found that Participant B's lump-sum value was incorrectly determined using an incorrect age, which was the result of using an incorrect date of birth. AR 872.

38. Moreover, the Initial Determination found that participants' lump-sum values were calculated using the incorrect annuity starting date because they were valued as April 30,

2010, not the March 15, 2013 date of distribution, in violation of 29 C.F.R. § 4041.28(c)(2). AR 872.[2]

39. Finally, the Initial Determination found that participant's lump-sums were valued using PPA Assumptions in accordance the 2015 Amendment; thereby reducing lump-sum benefits in accordance with a Plan amendment adopted after the Termination Date in violation of 29 C.F.R. § 4041.8.[3] AR 872-73.

40. Compliance with the Initial Determination required State Automatic to: (1) pay the death benefit owed to the surviving spouse of Participant A; (2) recalculate Participant's B lump-sum value using the correct date of birth; and (3) recalculate participants' lump-sum values as of the correct annuity start date using whichever produced the greater lump-sum payment using: (a) the Plan's interest rate (6%) and the Plan's mortality table (1983 IAM & IAF post-retirement mortality table), (b) the 30-year Treasury rate in effect for December 2012 (2.88%) and the 1994 GAR mortality table, and (c) the PPA applicable interest rate for December 2012 in effect for 2012 Plan year (1.00%, 3.57%, 4.77%) and the 2013 applicable mortality table. Participants were entitled to the greatest lump-sum value. AR 873.

41. State Automatic did not request reconsideration of the Initial Determination.

42. Instead, by letter dated March 7, 2017, State Automatic claimed financial hardship in complying with the Initial Determination. AR 876-77. Because State Automatic

---

[2] The Initial Determination also found that the benefit election forms provided to participants were not timely issued and did not offer all of the optional forms of distributions available under the Plan. However, none of the participants in the Plan elected to receive their benefits as an annuity, so no further action was required. AR 873.

[3] The Initial Determination also states that although the Plan submitted an application to the Internal Revenue Service ("IRS") through its Voluntary Correction Program, and received approval to retroactively amend the Plan to substitute PPA Assumptions with GATT Assumptions, granting of such an amendment by the IRS does not excuse compliance with PBGC's regulation 29 C.F.R. § 4041.8. AR 872. As the IRS's approval letter states, IRS approval satisfies the requirement of the IRC. AR 590.

did not dispute any of the findings in the Initial Determination, those determinations became final agency determinations on February 5, 2017. *See* 29 C.F.R. § 4003.22.

43. On information and belief, as of the date of the filing of this Complaint, none of the additional benefit payments required by the Initial Determination have been made to the Plan's participants and beneficiaries.

44. State Automatic did not complete the standard termination of the Plan by valuing and distributing assets in accordance with the Plan provisions in effect on the Termination Date and applicable law. Additional benefits – calculated in accordance with applicable Plan provisions and applicable law, plus interest – are owed to Plan participants and beneficiaries.

45. As required by applicable law and the Plan on its Termination Date, Participant A's spouse has not received a benefit, Participant B's benefit was calculated using the wrong age, and lump-sum distributions were not valued as of the date of distribution using the GATT Interest Rate and the GATT Mortality Table in effect prior to the post-termination 2015 Amendment.

46. State Automatic has not fully satisfied all benefit liabilities due under the Plan in violation of Title IV of ERISA and applicable regulations. *See* 29 U.S.C. § 1341.

47. Pursuant to 29 U.S.C. §§ 1303 and 1341, State Automatic is liable for additional distributions to the Plan's participants and beneficiaries, in accordance with PBGC's final audit determinations set forth in the Initial Determination, plus interest.

**Request for Relief**

WHEREFORE, PBGC respectfully requests that this Court:

(1) Enter judgment in favor of PBGC against State Automatic enforcing PBGC's Final Determination and requiring State Automatic to comply with the provisions of Title IV of ERISA;

(2) Award to PBGC all costs and expenses of litigation incurred in connection with this action; and

(3) Grant such other legal or equitable relief as shall be just and proper.

Respectfully submitted,

Dated: December 6, 2017

| | |
|---|---|
| **LOCAL COUNSEL** | /s/ Damarr M. Butler |
| JOEL R. LEVIN | JUDITH STARR |
| Acting United States Attorney | General Counsel |
| THOMAS P. WALSH | KARTAR KHALSA |
| Assistant United States Attorney | Deputy General Counsel |
| U.S. Attorney's Office, | SARA B. EAGLE |
| Northern District of Illinois | Assistant General Counsel |
| 219 S. Dearborn Street, 5th Floor | DAMARR M. BUTLER |
| Chicago, IL 60604 | Attorney |
| Telephone: (312) 353-5312 | Pension Benefit Guaranty Corporation |
| Email: thomas.walsh2@usdoj.gov | Office of the Chief Counsel |
| | 1200 K. Street, N.W. |
| | Washington, D.C. 20005 |
| | Telephone: (202) 326-4020, ext. 6883 |
| | Facsimile: (202) 326-4112 |
| | Email: butler.damarr@pbgc.gov and efile@pbgc.gov |

*Attorneys for PBGC*